UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMTIH DIVISION

CINDY J. FLURRY                                                                                    PLAINTIFF

       VS.                              Civil No. 2:14-cv-2116-MEF

CAROLYN W. COLVIN,                                                                          DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Cindy J. Flurry, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §423(d)(1)(A), 1382c(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. §405(g).

### I.     Procedural Background:

Plaintiff filed her application for DIB on June 26, 2011, alleging an onset date of December 8, 2008, due to chronic neck and back pain, fibromyalgia, depression, adult attention deficit disorder ("ADD"), gastroesophageal reflux disease (GERD), and high blood pressure. (T. 115-116, 151) Plaintiff's application was denied initially and on reconsideration. (T. 61-63, 65-67). Plaintiff then requested an administration hearing, which was held in front of Administrative Law Judge ("ALJ"), Hon. Ronald L. Burton, on January 30, 2013. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 45 years of age and had graduated from high school. (T. 28, 152) Her past relevant work experience included working as a customer service

1

representative in the transportation business from September 30, 1991, until her date of onset, December 8, 2008. (T. 140, 152)

On May 22, 2013, the ALJ found Plaintiff's generalized complaints of pain secondary to injuries sustained in an automobile accident in January 2008 severe, however the ALJ found Plaintiff's ADD and depression not severe, as they did not cause more than a minimal limitation in her ability to perform basic mental work activities. (T. 12-13) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from December 8, 2008, through the date of his decision, May 22, 2013. The ALJ determined Plaintiff had the RFC to perform the full range of light work. (T. 14)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 20, 2014. (T. 1-4) Plaintiff then filed this action on May 15, 2014. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 7) Both parties have filed briefs, and the case is ready for decision. (Doc. 11 and 12)

## II.  Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart,* 292 F.3d. 576, 583 (8th Cir. 2002). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's decision." *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000). "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox, v. Asture,* 495 F.3d 617, 617 (8th Cir. 2007). The AJL's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d, 964, 966 (8th

Cir. 2003). The Court considers the evidence that "supports as well as detracts from the Commissioner's decision, and we will not reverse simply because some evidence may support the opposite conclusion." *Hamilton v. Astrue,* 518 F.3d 607, 610 (8th Cir. 2008). If after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel,* 221 F.3d at 1068.

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairments, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

If such an impairment exists, the ALJ must determine whether the plaintiff has demonstrated she is unable to perform either her past relevant work, or any other work that exists in significant numbers in the national economy. (20 C.F.R. §416.945). The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the plaintiff has engaged in substantial gainful activity since filing his or her claim; (2) whether the plaintiff has a severe physical and/or mental impairment of combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether

the plaintiff is able to perform other work in the national economy given his or her age, education and experience. 20 C.F.R. §404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker,* 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.150, 416.920 (2003).

### III.  Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the alleged date of onset December 8, 2008, through the date of the ALJ's decision, May 22, 2013. Plaintiff raises five issues on appeal, which can be summarized as: (A) the ALJ failed to fully and fairly develop the record; (B) the ALJ erred in his determination of the severity of Plaintiff's impairments; (C) the ALJ erred in his *Polaski* analysis; (D) The ALJ erred in his RFC determination; and, (E) the ALJ erred at step four of his analysis when he determined Plaintiff could perform past relevant work. (Doc. 11 pp. 5-16)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

### A.  Fully and fairly develop the record:

Plaintiff asserts the ALJ failed to fully and fairly develop the record when the ALJ failed to order additional consultative examinations. The ALJ owes a duty to a Plaintiff to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient

4

evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).The undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision, thus remand is not necessary.

"A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted). Where "the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing." *Id*. (internal quotations and citation omitted). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id*. (internal quotations and citation omitted).

> While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo* [*v. Barnhart*], 377 F.3d [801,] 806 [(8th Cir. 2004)]. The Commissioner's regulations explain that contacting a treating physician is necessary only if the doctor's records are "inadequate for us to determine whether [the claimant is] disabled" such as "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§404.1512(e), 416.912(e).

*Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

Plaintiff argues the ALJ erred when he rejected the treating source opinion evidence, thus there was an inadequate foundation for the ALJ's RFC determination. (Doc. 11 pp. 7) The Plaintiff is mistaken. The only doctor's opinion the ALJ rejected was Dr. Thompkins's medical source statement, and he did so because it was not consistent with the doctor's treatment records that documented only conservative treatment with no acute care or hospitalization. *See Hogan v. Apfel*,

5

239 F.3d 958, 961 (8th Cir. 2001) (insistent and unsupported portions of the treating physician's medical source statements properly discounted.)

The ALJ relied on Dr. Russell Branum's opinion, a rheumatologist, who observed good range of motion in her hips, knees, and ankles with mild crepitation and pain in the bursa with shoulder movement.  In July of 2010, Dr. Branum determined Plaintiff's chronic back and neck pain were consistent with fibromyalgia and recommended Cymbalta, aerobic exercise, stretching, neck and back exercises, and physical therapy. (T. 544) Dr. Branum also treated Plaintiff's ADD with Adderall.  By October 13, 2010, Dr. Branum observed only moderated paired tender points of fibromyalgia with a slight decrease range of motion of the neck and believed the Cymbalta improved the muscular tenderness. (T. 554) In January of 2011, Advanced Nurse Practitioner Woodrow, in conjunction with Dr. Branum, thought Plaintiff was "was "capable of working and should go back to work, as this would be in her best interest, as many people who have fibromyalgia do benefit from moving and working," and she thought the changes would help aid her pain. (T. 558)

Dr. Branum continued to treat Plaintiff through March of 2012.  He noted Plaintiff had slightly improved since physical therapy and injections.  Plaintiff also had moderate paired tender points of fibromyalgia and he recommended to continue Cymbalta.  Dr. Branum noted Plaintiff's activity level was limited by back pain, fibromyalgia, and coexisting depression. (T. 735)

In making his RFC determination, the ALJ also relied on the MRIs from 2008 and 2012, the opinion of the neurologist, Dr. Shawn Moore, that Plaintiff did not need surgery, and the state agency medical consultant's examinations where Dr. Julius Petty determined Plaintiff could perform a full range of light work and Dr. Woodson-Johnson determined Plaintiff's mental issues

were not severely limiting and they did not significantly impact her capacity to engage in work related activities.

In reviewing the entire record, the undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision. Furthermore, the Plaintiff has not demonstrated unfairness or prejudice resulting from the ALJ's failure to order additional consultative examinations to further develop the record. Such a showing is required in order for a case to be reversed and remanded. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993)(absent unfairness or prejudice, we will not reverse or remand). Accordingly, the ALJ did not err in failing to develop the record and his decision is affirmed.

### B. Severity of Impairments:

Plaintiff argues the ALJ erred when he determined Plaintiff had "generalized complaints of pain secondary to injuries sustained in an automobile accident in January 2008." (T. 12) The Commissioner uses a five-step evaluation to determine if a claimant is disabled. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); See 20 C.F.R. § 416.920(a)(4). Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe." *Simmons,* 264 F.3d at 754; 20 C.F.R. § 416.920(a)(4). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *id.* at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for

7

the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing.  See, e.g., *Page v. Astrue*, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997); *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir.1996).

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527). 20 C.F.R. § 404.1508.

Plaintiff argues the ALJ applied the wrong legal standard in requiring a significant limitation standard to his evaluation of the Plaintiff's impairments rather than a de minimus standard. (Doc. 11 pp. 8) The ALJ found Plaintiff's impairments severe as they significantly limited her ability to perform basic work activities, which is consistent with 20 C.F.R. §404.1520(c). The ALJ applied the correct standard for an impairment that is not severe; an impairment or combination of impairments is not severe if it does not significantly limit one's physical or mental ability to do basic work activities. 20 C.F.R. §404.1521. The undersigned finds the ALJ applied the correct standard. The Decision stated Plaintiff's ADD and depression did not cause more than a minimal limitation in the Plaintiff's ability to perform basic mental work activities.

Next, Plaintiff argues the ALJ failed to take into consideration whether Plaintiff's combined impairments had more than a minimal effect on her ability to perform work activities and that the

8

ALJ failed to mention Plaintiff's fibromyalgia. (Doc. 11 pp. 8) "Fibromyalgia is a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep." THE MERCK MANUAL, *Fibromyalgia*, http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/bursa_muscle_and_tendon_disorders/fibromyalgia.html?qt=fibromyalgia&alt=sh (last accessed June 8, 2015). Any fibromuscular tissues may be involved, but fibromyalgia is especially prevalent in the occiput, neck, shoulders, thorax, low back, and thighs. *Id*. The symptoms of fibromyalgia are typically generalized, in contrast to localized soft-tissue pain and tenderness, and can be exacerbated by environmental or emotional stress, poor sleep, trauma, or exposure to dampness or cold or by a physician who implies that the disorder is "all in the head." *Id*. There are, however, no laboratory tests for the presence or severity of fibromyalgia, and treatment includes exercise, local heat, stress management, drugs to improve sleep, and analgesics. *Id*. The ALJ found Plaintiff's "generalized complaints of pain secondary to injuries sustained in an automobile accident" severe, and while he did not specifically mention Plaintiff's fibromyalgia, he incorporated her fibromyalgia diagnosis, treatment and limitations throughout his decision. (T. 16-17) *See Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir. 1992), quoting *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir. 1987) ("[a]n 'arguable deficiency in opinion-writing technique' does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome").

The ALJ further considered Plaintiff's depression and ADD. He looked to Dr. Max Baker's, psychiatrist, treatment records. Dr. Baker noted Plaintiff demonstrated a normal mental state and continued with Cymbalta. (T. 13) Moreover, the ALJ looked to Dr. Rebecca Floyd, Plaintiff's

primary care physician, who prescribed Adderall and Vyvanse. Throughout the record Plaintiff switched between Vyvanse and Adderall, and claimed they worked. (T. 633, 634, 575, 616, 617, 618, 621, 650, 709) Moreover, Cheryl Woodson-Johnson, Psy.D, a state agency medical consultant, performed a psychiatric review technique and determined Plaintiff's mental issues were not severely limiting and they did not significantly impact her capacity to engage in work related activities. (T. 694) The ALJ considered the medical evidence of record and Dr. Woodson-Johnson's opinion and determined Plaintiff's ADD and depression were not severe.

Plaintiff had the burden of showing a severe impairment significantly limited her physical or mental ability to perform basic work activities. *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001). The undersigned finds substantial evidence supported the ALJ's determination of Plaintiff's severe impairment of generalized complaints of pain secondary to injuries sustained in an automobile accident in January 2008.

### C. *Polaski* analysis:

Plaintiff next argues the ALJ failed to properly evaluate the Plaintiff's subjective complaints of pain and apply the *Polaski* factors. (Doc. 11 pp. 9) Among the ALJ's findings in his Decision, was a finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (T. 15) While the ALJ employed a bit of Social Security boilerplate, the ALJ did appropriately address Plaintiff's credibility by examining and addressing the relevant medical evidence, application documents, and testimony at the hearing in accordance with applicable regulations, rulings and Eighth Circuit case law. (T. 15)

It is the ALJ's duty to determine the Plaintiff's RFC. Before doing so, the ALJ must determine the applicant's credibility, and how the Plaintiff's subjective complaints play a role in assessing her RFC. *Pearsall v. Massanari,* 274 F.3d at 1217-18. The ALJ must give full "consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and, (5) functional restrictions. The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Polaski v. Heckler*, 739 F.2d 1230, 1322 (8th Cir. 1984).

To conduct the proper *Polaski* analysis, "[m]erely quoting *Polaski* is not good enough, especially when an ALJ rejects a claimant's subjective complaints of pain." *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995). Instead, "*Polaski* requires that an ALJ give full consideration to all of the evidence presented relating to subjective complaints." *Ramey v. Shalala*, 26 F.3d 58, 59 (8th Cir. 1994). To that end, "[w]hen making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996) (citing *Hall*, 62 F.3d at 223). Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence. *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (citing *Ricketts v. Secretary of Health and Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990)). However, if "the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain .... [a]n

arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d at 883).

In applying the factors discussed in *Polaski*, the ALJ found that Plaintiff's symptoms were not entirely credible. The ALJ considered the following inconsistencies. Plaintiff claimed she was laid off from her job of eighteen years, but she also attributed it to her being required to take narcotic pain medication. During Plaintiff's physical therapy appointments, Plaintiff stated, on several occasions, that she was doing well and physical therapy helped." (T. 320, 331, 348, 367, 394, 395, 449, 469, 483) *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). At one of her final appointments on August 15, 2011, Plaintiff indicated she had felt better, but had increased soreness from a lot of walking she had performed the weekend before. (T. 320) The ALJ also pointed out in February 2010, Plaintiff stated the pain interfered with most aspects of her life, including activities of daily living, and household chores. (T. 16) However, the next month Plaintiff advised her physical therapist she was taking a break "until further notice." (T. 16, 395) *See Haley v. Massanari, 258 F.3d* at 748 (holding that inconsistencies between subjective complaints of pain and daily living patterns diminish credibility); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

Because the ALJ's credibility determination was supported by good reasons and substantial evidence, we conclude that it is entitled to deference. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006); *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001) (holding that ALJ's decision to

12

discredit plaintiff's testimony will be upheld if he gives a good reason for doing so, even if every factor is not discussed in depth).

Plaintiff also argues the ALJ failed to incorporate the third party statement made by Plaintiff's mother. (Doc. 11 pp. 10) In reviewing the ALJ's opinion, the Court cannot determine from the record whether the ALJ overlooked these statements, gave them some weight, or completely disregarded them. And, while an ALJ's failure to explain why evidence from lay persons was rejected is technically error and can result in remand, this is not always the case. *See Smith v. Heckler*, 735 F.2d 312, 317 (8th Cir. 1984). "Although specific delineations of credibility findings are preferable, an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence." *Carlson v. Chater*, 74 F.3d 869 (8th Cir. 1996) (quotations omitted). In other words, if the "arguable deficiency in opinion-writing technique" had no effect on the outcome of the case, then remand is not necessary. *Robinson v. Sullivan*, 956 F.2d at 841(internal quotation marks and citation omitted); *see also Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995).

In the present case, Plaintiff's mother's testimony consisted of five pages. The highlights of her testimony are as follows: (1) helped keep her checkbook balanced, cooking; (2) Plaintiff had a hard time walking and getting in and out of vehicle; (3) on her bad days she could hardly get off the couch to walk to the mailbox; (4) she tried working from home, but the pain was too great to sit there non-stop; and, (5) before she stopped working she was in a lot of pain at work. In light of the medical evidence of record, and Plaintiff's own testimony, the Court believes the reasons the ALJ gave for discrediting Plaintiff's testimony would also serve as a basis for discrediting her mother's testimony. *See Young v. Apfel,* 221 F.3d at 1068 (ALJ's failure to give specific reasons for disregarding testimony of claimant's husband was inconsequential, as same reasons ALJ gave

13

to discredit claimant could serve as basis for discrediting husband); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996) (holding that ALJ's failure to specifically outline his reasons for rejecting testimony of disability insurance claimant's wife did not require reversal where the ALJ's conclusion that claimant was not entitled to benefits was supported by substantial evidence).

    **D. <u>RFC determination:</u>**

Plaintiff argues the ALJ erred in his RFC determination concluding Plaintiff could perform a full range of light work with no mental or postural limitations. (Doc. 11 pp. 11) RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the

claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

Plaintiff argues that the ALJ's RFC determination was based upon non-examining sources; Plaintiff is mistaken. In assessing the Plaintiff's RFC, the ALJ considered the Plaintiff's testimony at the hearing, disability interview, disability and function reports, the MRIs performed in 2008 and 2012, her physical therapy records, the medical records from Dr. Branum, Dr. Moore, and Dr. Floyd, and the state agency medical consultative examinations. (T. 15-18)

The ALJ considered Plaintiff's physical therapy records, where she had attended more than fifty (50) sessions, however in August 2009 Plaintiff advised the therapist she was doing well and planned to take a break. Moreover, in March of 2010, after restarting physical therapy, Plaintiff advised the therapist again she was going to stop therapy until further notice. (T. 16) Starting and stopping physical therapy, without a doctor's orders, indicates that Plaintiff's pain was not as great as she had alleged.

In his RFC determination, the ALJ took into consideration Dr. Branum's examination of the Plaintiff showing good range of motion in her hips, knees, and ankles with mild crepitation and pain the subacromial bursa with shoulder movement. (T. 16) Further, Dr. Branum recommended aerobic exercise, stretching, neck and back exercises, and additional physical therapy. While Plaintiff stated she was not able to work, Dr. Branum's advanced nurse practitioner noted she was able to work and it would be in her best interest as many people who have fibromyalgia benefited from moving and working. (T.16)

The ALJ also took into consideration Dr. Moore's examination of the Plaintiff where she had good lumbar range of motion with flexion, extension, and lateral rotation; she was able to touch her toes and stand on her heels and toes; she demonstrated negative straight leg raises; and there

15

was no discomfort in the abduction or adduction of the hips. (T. 16) After reviewing Plaintiff's 2012 MRI, Dr. Moore opined that Plaintiff had mild facet arthropathy and mild degenerative disc disease at L4-L5 and L5-S1. Dr. Moore did not recommend surgery, as he believed it would result in a significant loss of range of motion and a high risk of adjacent segment disease in the future. (T. 16)

The Court rejects Plaintiff's contention that the ALJ improperly disregarded the opinion of her treating physician, who examined Plaintiff several times, but treated Plaintiff conservatively. Also in his RFC determination, the ALJ took into consideration Dr. Tomkins' examination of the Plaintiff, where Plaintiff indicated the injections had helped her back pain. The ALJ took into consideration Dr. Tomkins' conservative treatment of Plaintiff's back pain, including injections and medications. (T. 17)

The undersigned concludes the ALJ properly discounted Dr. Tompkins' opinion after finding that it was not supported by the objective evidence in the record and contradicted other evidence in the record. See *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (ALJ may credit another medical evaluation over that of treating physician when other assessment is supported by better medical evidence, or where treating physician renders inconsistent opinions); *Ellis v. Barnhart,* 392 F.3d 988, 994-95 (8th Cir. 2005) (medical opinion that applicant is disabled involves issue reserved for Commissioner, and is not entitled to controlling weight).

While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Based on the objective medical evidence, medical evidence, the state-agency evidence, and the testimony of the Plaintiff, the RFC determined by the ALJ is supported by substantial evidence.

16

E. **Step-four analysis:**

Plaintiff's final argument is that the ALJ erred at step four of his analysis when he relied upon and mischaracterized the vocational expert's testimony. (Doc. 11 pp. 13) At step four, the ALJ determines "whether a claimant's impairments keep [him] from doing past relevant work." *Wagner v. Astrue,* 499 F.3d at 853 (quoting *Jones v. Chater,* 86 F.3d 823, 826 (8th Cir. 1996)). If "the claimant has the [RFC] to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel,* 226 F.3d 969, 973 (8th Cir. 2000). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. *Moore v. Astrue,* 572 F.3d 520, 523 (8th Cir. 2009); *Dukes v. Barnhart,* 436 F.3d 923, 928 (8th Cir. 2006); *Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005).

In the present case, the ALJ found Plaintiff could perform her past relevant work after he took into consideration what she actually performed and generally performed. Plaintiff argues her past relevant work as a customer service representative was inconsistent with the Dictionary of Occupational Titles (DOT) code for a customer service representative. Not so. The ALJ took into consideration all of the evidence in determining Plaintiff could performed her past relevant work. The Plaintiff testified about additional duties she performed as a customer service representative, and the vocational expert added administrative assistant to the list of jobs she was able to perform. (T. 32)

Here the ALJ considered both what Plaintiff performed and the vocational expert's testimony, which was consistent with the DOT, as to what was generally performed in the national economy. *See Wright v. Astrue*, 489 Fed. Appx. 147, 149 (8th Cir. 2012), citing 20 C.F.R. §404.165060(b)(2), 416.960(b); *Wagner v. Astrue*, 499 F.3d at 853-854 (an ALJ can "consider the demands of the

claimant's past relevant work either as the claimant actually perform it or, as here, as performed in the national economy.") The undersigned finds substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work as a customer service representative of a light exertional level and semiskilled work. The ALJ's determination was supported by objective medical evidence, including opinions of treating physicians, and state agency medical consultants, which expressed the opinion Plaintiff could perform a full range of light work.

### IV. Conclusion:

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's decision denying Plaintiff benefits, and the Commissioner's decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 9th day of June, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE